UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

BRITTANY L. PRIES

                  Plaintiff,

      v.

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

                  Defendant.

**REPORT
and
RECOMMENDATION

15-CV-078A(F)**

───────────────────────────────────────

APPEARANCES:           LAW OFFICES OF KENNETH R. HILLER
                                  Attorneys for Plaintiff
                                  TIMOTHY HILLER, of Counsel
                                  6000 North Bailey Avenue, Suite 1A
                                  Amherst, New York 14226

                                  JAMES P. KENNEDY
                                  ACTING UNITED STATES ATTORNEY
                                  Attorney for Defendant
                                  MICHELLE L. CHRIST
                                  Assistant United States Attorney, of Counsel
                                  Federal Centre
                                  138 Delaware Avenue
                                  Buffalo, New York 14202, and

                                  STEPHEN P. CONTE
                                  Regional CHIEF Counsel
                                  United States Social Security Administration
                                  Office of the General Counsel, of Counsel
                                  26 Federal Plaza
                                  Room 3904
                                  New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn Colvin as the defendant in this suit. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on June 2, 2015. (Doc. No. 8). The matter is presently before the court on motions for judgment on the pleadings, filed on June 1, 2015, by Plaintiff (Doc. No. 7), and on September 30, 2015, by Defendant (Doc. No. 13).

## BACKGROUND

Plaintiff Brittany Pries ("Plaintiff" or "Pries"), seeks review of Defendant's decision denying her Disability Supplemental Social Security Benefits ("disability benefits") under Title XVI of the Social Security Act ("the Act"). In denying Plaintiff's application for disability benefits, Defendant determined that Plaintiff had the severe impairments of a learning disorder, post-traumatic stress disorder ("PTSD"), and anxiety (R. 18),[2] but does not have an impairment or combination of impairments within the Act's definition of impairment. (R. 19). Defendant further determined that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels with limitations to performing simple, repetitive two and three-step tasks, and no more than occasional interaction with supervisors, co-workers and the public. (R. 21). As such, Plaintiff was found not disabled, as defined in the Act, at any time from the alleged onset date through the date of the Administrative Law Judge's decision on April 12, 2013.

---

[2] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

2

# PROCEDURAL HISTORY

Plaintiff filed her application for disability benefits on October 27, 2011 (R. 107). Plaintiff's application was initially denied by Defendant on December 27, 2011, and, pursuant to Plaintiff's request filed January 11, 2012 (R. 32), a hearing was held before Administrative Law Judge Curtis Axelsen ("Axelsen" or "the ALJ"), on January 31, 2013, in Buffalo, New York. (R. 33-56). Plaintiff, represented by Kelly Lagen, Esq. ("Lagen"), appeared and testified at the hearing. The ALJ's decision denying the claim was rendered on April 12, 2013. (R. 16-27).

Plaintiff requested review by the Appeals Council, and the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on November 28, 2014. (R. 1-4). This action followed on January 27, 2015, with Plaintiff alleging that the ALJ erred by failing to find her disabled. (Doc. No. 1).

On June 1, 2015, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Doc. No. 7) ("Plaintiff's Memorandum"). Defendant filed, on September 30, 2015, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 13) ("Defendant's Memorandum"). On October 21, 2015, Plaintiff filed a Notice of No Reply (Doc. No. 14). Oral argument was deemed unnecessary. Based on the following, Plaintiff's motion should be DENIED.

# **FACTS**[2]

Plaintiff was born on December 24, 1992, lives with her sister, completed tenth grade in high school, and worked most recently as a cashier in a coffee shop when she stopped working on January 30, 2010, as a result of her anxiety and depression. (R. 146-47). Relevant to Plaintiff's onset date of disability, on October 27, 2011, Plaintiff attended a mental health counseling session with Carmetris Harper ("Ms. Harper"), a social worker at Spectrum Human Services ("Spectrum"), in Buffalo, New York, where Plaintiff reported being in a good mood and taking her Lexapro (anxiety) medication as prescribed. (R. 323).

On October 31, 2011, Nurse Practitioner Jerry Frisicaro ("N.P. Frisicaro"), completed a medication authorization to prescribe Vyvase (attention deficit disorder) for Plaintiff. (R. 321-22). N.P. Fisicaro prescribed Abilify (anti-psychotic) for Plaintiff on November 7, 2011. (R. 322).

On November 10, 2011, Plaintiff attended mental health counseling with Ms. Harper who noted that Plaintiff reported passing out from body pain. (R. 323). On November 18, 2011, Ms. Harper noted that Plaintiff reported that her medication was making her feel "very bad" on the inside and that Plaintiff had developed a leg rash. (R. 324). A progress note by Ms. Harper on December 1, 2011, noted that Plaintiff experienced sleep problems while taking her Abilify. (R. 324-25).

On December 2, 2011, Plaintiff reported that she experienced a "flip mood" and argued with her sister and boyfriend. (R. 325). N.P. Frisicaro increased Plaintiff's Vyvanse prescription on December 7, 2011. (R. 477).

---

[2] Taken from the pleadings and the administrative record.

On December 8, 2011, Rachel Hill, Ph.D., completed a consultative psychiatric evaluation on Plaintiff and evaluated Plaintiff with the ability to maintain attention and concentration, follow and understand simple directions and instructions, perform simple tasks independently, maintain a schedule and learn new tasks, and relate adequately with others. (R. 421).

On December 16, 2011, Plaintiff approved a treatment plan that included psychotropic medication to treat Plaintiff's anxiety, panic attacks, attention deficit disorder ("ADHD"), and mood swings. (R. 478).

On December 23, 2011, J. Echevarria, a psychiatrist with the Social Security Administration completed a psychiatric review technique form on Plaintiff and indicated that a residual functional capacity assessment was necessary to evaluate Plaintiff's mental disorder. (R. 424).

During counseling sessions with Ms. Harper on January 25, 2012, and February 10, 2012, Plaintiff reported that she was doing well in school and was hoping to complete her GED. (R. 503, 505). Plaintiff attended counseling sessions with Ms. Harper on March 28, 2012, April 17, 2012, May 15, 2012, and May 26, 2012, and reported that she was still taking her GED classes but that her medication was effective for only half of each day causing Plaintiff to be moody the remainder of the day. (R. 510, 534). Plaintiff received mental health counseling from Ms. Harper on June 1, 2012, June 22, 2012, and July 17, 2012, and reported trouble sleeping as a result of her medication. (R. 535-40). During a treatment session with Ms. Harper on August 14, 2012, Plaintiff reported stress as a result of her GED (R. 542), and reported stress, panic attacks and anxiety on August 30, 2012. (R. 554).

5

Plaintiff returned to Ms. Harper for counseling on December 17, 2012, and reported that her medication was not working. (R. 582). On January 14, 2013, Ms. Harper diagnosed Plaintiff with mood disorder, impulse-control disorder, and PTSD. (R. 595).

On February 25, 2013, Renee Baskin, M.D. ("Dr. Baskin"), completed an adult intelligence examination on Plaintiff and noted that Plaintiff was cooperative, tense and nervous, and that Plaintiff's responses were varied between careful and careless, and that Plaintiff made only a half-hearted effort during the examination. (R. 598). Dr. Baskin administered a Wide Range Achievement Test ("WRAT-4"), that showed Plaintiff reading at a fourth grade level with a score of 71, and a full-scale IQ score of 61, leading Dr. Baskin to diagnose Plaintiff with mild mental retardation and recommend that Plaintiff seek vocational training. (R. 600).

## **DISCUSSION**

**1.    Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security Act if the individual is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . .. An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

6

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves that he or she is severely impaired and unable to perform any past relevant work, the burden shifts to the Commissioner to prove there is alternative employment in the national economy suitable to the claimant. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

A. **Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and

1383(c)(3).  "Congress has instructed . . . that the factual findings of the Secretary,[1] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits.  *Id.*  The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Absent an impairment, the applicant is not eligible for disability benefits.  *Id.*  Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[7]  42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920.  *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

---

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. 20 C.F.R. §§ 404.1520(g), 416.920(g). The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F2d at 467. In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision. *Richardson*, 402 U.S. at 410.

### B. <u>Substantial Gainful Activity</u>

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit. 20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed. 20 C.F.R. §

9

404.1572(a).  Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574.  In the instant case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity.  Plaintiff does not contest this finding.

## C. <u>Severe Physical or Mental Impairment</u>

The second step of the analysis requires a determination whether Plaintiff had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 and significantly limits the Plaintiff's ability to do "basic work activities."  The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 1521"), 416.921(b).

In this case, the ALJ determined that Plaintiff had the severe impairments of learning disorder, PTSD, and anxiety (R. 18), and that Plaintiff did not have an impairment or combination of impairments as defined under 20 C.F.R. § 404.920(c).  (R. 19-21).  Plaintiff does not contest the ALJ's step two disability findings.

## D. <u>Listing of Impairments, Appendix 1</u>

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments").  If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough

10

to prevent the claimant from performing any gainful activity and the claimant is considered disabled.  20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled").  The relevant listings of impairments in this case include 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02 ("§ 12.02")(Organic mental disorders), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.05 ("§ 12.05") (Mental retardation), and 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.06 ("§ 12.06") (Anxiety related disorders).  Plaintiff does not contest the ALJ's findings on this step of the disability determination.

### E. Plaintiff's ability to perform past relevant work

In determining whether a claimant's impairment(s) prevent the claimant from performing past relevant work, ALJs are required to review the claimant's residual functional capacity and physical and mental demands of the claimant's past work.  *See* 20 C.F.R. § 404.1520(e).  Specifically, the Commissioner must demonstrate the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities."  *Id.*  An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work.  *Decker*, 647 F.2d at 294*.*

In this case, the ALJ determined that Plaintiff had no past relevant work. (R. 26). Plaintiff does not contest this finding.

### F. Suitable Alternative Employment in the National Economy

The Second Circuit requires that "all complaints . . . must be considered together in determining . . . work capacity."  *DeLeon v. Secretary of Health and Human Services,*

734 F.2d 930, 937 (2d Cir. 1984). Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform past work, 20 C.F.R. § § 404.1520(a)(4)(iv), and to prove substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

It is improper to determine a claimant's residual work capacity based solely upon an evaluation of the severity of the claimant's individual complaints. G*old v. Secretary of Health and Human Services*, 463 F.2d 38, 42 (2d Cir. 1972). To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id.* at 294.

An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294. In addition, the Commissioner must establish that the claimant's skills are transferrable to the new

employment if the claimant was employed in a "semi-skilled" or "skilled" job.[3] *Id*. at 294. This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296. Where applicable, the Medical Vocational Guidelines of Appendix 2 of Subpart P of the Regulations ("the Grids") may be used to meet the Secretary's burden of proof concerning the availability of alternative employment and supersede the requirement of vocational expert testimony regarding specific jobs a claimant may be able to perform in the regional or national economy. *Heckler v. Campbell*, 461 U.S. 458, 462 (1983).

In instances where nonexertional limitations diminish a claimant's ability to perform the full range of "light" work, the ALJ should require the Secretary to solicit testimony from a vocational expert regarding the availability of jobs in the national and regional economies suitable for employment of an individual with exertional and nonexertional limitations similar in nature to the claimant's. *Bapp*, 802 F.2d 606 at 501. Following a vocational expert's testimony, a plaintiff must be afforded an opportunity to rebut the expert's evidence. *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989).

The Act requires the ALJ utilize the same residual functional capacity assessment used to determine if a claimant can perform past relevant work when assessing a claimant's ability to perform other work. 20 C.F.R. § 404.1560(c)(2). "Hypothetical questions asked of the vocational expert must 'set out all of the claimant's impairments.'" *Lewis v. Apfel,* 236 F.3d 503, 517 (9th Cir. 2001) (citing *Gamer v. Secretary of Health and Human Services*, 815 F.2d 1275, 1279 (9th Cir. 1987)).

In this case, the ALJ determined, based on Social Security Ruling 96-9p, that Plaintiff had the residual functional capacity to perform simple, repetitive two and three-step tasks involving no more than occasional interaction with supervisors, coworkers and the public. (R. 26). Plaintiff maintains that the ALJ's reliance on Social Security Ruling ("S.S.R.") 96-9p is misplaced. In particular, Plaintiff maintains that the ALJ erred in citing S.S.R. 96-9p to establish that jobs within the sedentary occupational base that Plaintiff was capable of performing were not significantly limited as Plaintiff was able to hear and understand simple oral instructions and communicate important information. Plaintiff's Memorandum at 18. Plaintiff contends that the court should, instead, rely on the Third Circuit's rulings in *Sykes v. Apfel*, 228 F.3d 259, 267-68 (3d Cir. 2000) ("*Sykes*"*)*, and *Allen v. Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005) ("*Allen*"), to establish whether the ALJ was required to gather additional evidence on the effects of Plaintiff's non-exertional limitations (*Sykes*), or "crystal clear" Social Security Rulings to support the ALJ's reliance on the Grids to establish the Plaintiff's disability (*Allen*). Plaintiff's Memorandum at 16-17. Defendant maintains that no error results from the ALJ's reference to S.S.R. 96-9p, as the ALJ correctly analyzed Plaintiff's ability to work using the Grids, finding that Plaintiff's only non-exertional limitation, *i.e.*, only occasional interaction with others, did not so reduce the occupational base of work that Plaintiff was capable of performing such that Plaintiff should be considered disabled. Defendant's Memorandum at 16-18.

Plaintiff's reliance on the Third Circuit's rulings in *Sykes* and *Allen* is misplaced for several reasons. First, this Court is obliged to follow Second Circuit precedent until it is overruled by a higher court or until Supreme Court precedent renders it untenable*.*

*See United States v. Emmenegger,* 329 F. Supp.2d 416, 436 (2d Cir. 2012). Second, as Defendant correctly contends, the Second Circuit has not yet established precedent to require that the ALJ to obtain VE testimony where a claimant's nonexertional limitations do not significantly diminish the claimant's occupational base. *See Bapp,* 802 F.2d 601 at 605 (ALJ may rely on the Grids when they accurately reflect the claimant's impairments and the claimant's nonexertional impairments do not significantly limit the rage of work permitted by the claimant's exertional limitations). Third, in a report accompanying the Social Security Administration's promulgation of the Grids, negligible reductions in work capacity caused by non-exertional impairments do not invalidate the presumptions created by the Grids:

> Where a person has nonexertional (or additional exertional) limitations, the ranges or work he or she can perform (sedentary to heavy) are diminished by exclusion of the particular occupations or kinds of work within those ranges that entail use of the abilities which the person has lost. In some cases the exclusion will have a negligible effect, still leaving the wide range of work capability within the functional level; while in others the range of possible work may become so narrowed that the claimant does not have a meaningful employment opportunity.

42 Fed. Reg. 55,349, 55358 (1978); *Bapp*, 802 F.2d 601 at 606.

"The question of diminution of work capacity can be determined by evaluating [] 'the basic mental demands of competitive, remunerative, and unskilled work' as characterized by 'the ability, on a sustained basis, to understand carry out and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.'" *Hurd v. Apfel,* 2013 WL 140389, at *3 (N.D.N.Y. Jan. 11, 2013) (citing *Sipe v. Astrue*, 873 F.Supp.2d 471, 480 (N.D.N.Y. 2012)). Such is the case here where the ALJ found that Plaintiff's limitation in her ability to interact with others on an occasional basis did not diminish

Plaintiff's ability to perform unskilled sedentary work so as to require testimony by a vocational expert. *See Hurd v. Apfel*, 2013 WL 140389, at *4 (claimant who is able to occasionally interact with co-workers and work in proximity to co-workers but not in conjunction with co-workers is able to perform unskilled jobs that ordinarily involve dealing with objects and not people). Plaintiff's motion on this issue is without merit.

Plaintiff's contention that the ALJ relied on S.S.R. 96-9p in error to establish the Plaintiff's ability to hear and understand simple instructions is also without merit because the ALJ's reliance on S.S.R 96-9p accurately reflects the Plaintiff's limitation to work that includes simple, repetitive two and three step tasks that involve no more than occasional interaction with others. (R. 26). The ALJ's finding that Plaintiff is not disabled using the Grids, and without reliance on the testimony of a vocational expert is therefore without error. [4] Plaintiff's motion on this issue is without merit.

## CONCLUSION

Based on the foregoing, Plaintiff's motion (Doc. No. 7) should be DENIED; Defendant's motion (Doc. No. 13) should be GRANTED. The Clerk of the Court should be instructed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    August 7, 2017
               Buffalo, New York

---

[4] Even assuming, *arguendo*, that Plaintiff is correct that the ALJ's reliance on a report by N. Livingston is error, Plaintiff's Memorandum at 22-23, the ALJ's finding that Plaintiff is not disabled otherwise, as discussed, Background, *supra*, at 11-15, is based on substantial evidence in the record. Plaintiff's motion on this issue is without merit.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

                                                   /s/ *Leslie G. Foschio*
                                    _____
                                         LESLIE G. FOSCHIO
                              UNITED STATES MAGISTRATE JUDGE

DATED:      August 7, 2017
                Buffalo, New York